UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| NANCY SWINTEK-HALLINAN,<br><br>Plaintiff,<br><br>v.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA,<br><br>Defendant. | Civil No. 04-1386 JRT/JSM<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

William J. Marshall, **BABCOCK NEILSON MANNELLA & KLINT, PLLP**, 118 East Main Street, Anoka, MN 55303, for plaintiff.

Terrance J. Wagener, **KRASS MONROE**, 8000 Norman Center Drive, Suite 1000, Minneapolis, MN 55437-1178, for defendant.

Plaintiff Nancy Swintek-Hallinan ("Swintek-Hallinan") is a 53-year-old woman who formerly worked as a legal secretary for Winthrop and Weinstine P.A. In 1984, Swintek-Hallinan was involved in a motor vehicle accident that resulted in an injury to her lower back and has suffered chronic back pain ever since. In April 2003, Swintek-Hallinan filed a claim for long-term disability benefits from defendant UNUM Life Insurance Company ("UNUM"), the company that issued Winthrop & Weinstine's Group Long Term Disability Plan. UNUM denied her claim. Swintek-Hallinan appealed and UNUM denied her claim a second time.

Swintek-Hallinan then filed this lawsuit seeking recovery of disability benefits. UNUM moves for summary judgment arguing that, as claim administrator, it did not

abuse its discretion in determining that Swintek-Hallinan was not entitled to long-term disability benefits under the policy. Swintek-Hallinan moves for summary judgment as well. For the reasons discussed below, the Court denies UNUM's motion for summary judgment and grants Swintek-Hallinan's motion for summary judgment.

## BACKGROUND[1]

Swintek-Hallinan sustained cervical and lumber back injuries as a result of a car accident in March 1984 and was unable to work for nine months immediately following the accident. After a CT scan in 1984, Swintek-Hallinan was diagnosed with degenerative central bulging, mild pelvic tilt, and scoliosis to the right. Her treating physician's notes from 1984 to 1991 that Swintek-Hallinan suffered from almost constant back pain. During this time, Swintek-Hallinan underwent several procedures on her back, had extensive physical therapy, saw a chiropractor, and took pain and anti-inflammatory medication. In addition, Swintek-Hallinan reduced much of her daily activities so that she could continue to work.

In 1991, Swintek-Hallinan's treating physician moved out of state and she came under the care of Dr. John Stark, an orthopedic surgeon who diagnosed her with degenerative disc disease and spondylosis. Swintek-Hallinan also underwent a strength test at the Minnesota Lumbar Spine Clinic at this time and was found to have poor-fair upper strength, poor lower extremity strength, poor back extensor strength, and poor

---

[1] The details of Swintek-Hallinan's medical history included in this background section were primarily taken from a letter Swintek-Hallinan's treating physician, Dr. Borow, wrote in support of Swintek-Hallinan's claim for disability. The facts of her medical history are not in dispute in this case. The only thing from the letter that is in dispute is Dr. Borow's conclusion that Swintek-Hallinan is disabled.

incorporation of body mechanics when lifting from floor to waist level. After increased pain medication made it difficult for Swintek-Hallinan to continue working, she underwent spinal fusion surgery in November 1992.

Seven weeks after the surgery, Swintek-Hallinan was still in too much pain to work, even with taking Vicodin every four hours. In June 1993, Swintek-Hallinan underwent surgery again, this time to remove the hardware that was placed in her spine during the first surgery because it was causing her additional pain. After several weeks at home, Swintek-Hallinan contacted Dr. Stark and reported that she was still in too much pain to return to work. Dr. Stark prescribed steroids. The steroids helped with the pain, but due to the danger of steroids, she was not allowed to take them on a regular basis.

Eventually, with regular use of Darvocet, Elavil, and Relafin, Swintek-Hallinan returned to work full-time, occasionally missing several consecutive days of work due to pain. In January 1995, Swintek-Hallinan reported to her general practitioner, Dr. Carolyn Borow, that she was unable to work due to pain, and sought steroids and a referral for physical therapy. Dr. Borow prescribed another dose of steroids and Swintek-Hallinan went through extensive therapy at the Physicians Neck and Back Clinic. According to Dr. Borow:

> Over the next several years, I treated Nancy for her back pain. Nancy continued to work full-time as a legal secretary at Winthrop & Weinstine, P.A. She used Darvocet as needed and Elavil daily. When she had periods of debilitating pain that rendered her unable to work and several days of bed rest did not help, Nancy would call me for a prescription of steroids with the hope that they would enable her to return to work.

(Ex. B. at UACL00165.)

In 2002, after reporting to Dr. Borow that the pain was increasing, and that it was moving into her hips and included numbness down to her toes, Dr. Borow ordered a bone density test. The test showed that Swintek-Hallinan had osteoporosis in her spine, left hip, and left femur, and had osteopenia in her right hip and right femur. In 2003, as her condition had worsened, Dr. Borow put Swintek-Hallinan on hormone replacement therapy and again referred her for physical therapy.

In April 2003, Swintek-Hallinan filed a claim for disability benefits from UNUM. In her application, Swintek-Hallinan stated that she worked as a legal secretary 30-35 hours per week and was unable to walk more than a block, could not stand for more than a half hour, and could only sit for about a half hour. As part of its investigation, UNUM interviewed Swintek-Hallinan and reviewed her medical records. Also as part of its investigation, UNUM provided Swintek-Hallinan's medical record to its in-house consulting physician, Dr. Joseph Thomas. Dr. Thomas concluded that the only supportable diagnosis was osteoporosis coupled with Swintek-Hallinan's subjective complaints of lower back pain and that there was no support for her having a disability that would keep her from performing her job. (*Id.* at UACL00436.) UNUM denied Swintek-Hallinan's claim in July 2003.

After receiving the denial, Swintek-Hallinan saw Dr. Borow. In her notes, Dr. Borow states that Swintek-Hallinan is "permanently and totally disabled" and that she believed Swintek-Hallinan's application was denied

> because they just haven't gotten all the documentation from the chart. She has long standing [history] of chronic back problems . . . She has had 2 surgeries. She has tried all kinds of physical therapy and back strengthening. She is unable to work and this is clearly documented.

(*Id.* at UACL00233.)

Swintek-Hallinan appealed UNUM's decision in August 2003. In support of the appeal, Dr. Borow sent a letter outlining Swintek-Hallinan's medical history, including the thirteen years under her care, and stated that she had "no reservation whatsoever in recommending [Swintek-Hallinan] for total and permanent disability and believe[d] that any type of employment may very well be detrimental to her already debilitating condition." (*Id.* at UACL00166.) As part of the standard appeal process, UNUM provided Swintek-Hallinan's medical records to a second in-house consulting physician, Dr. Terrance Farrell. Dr. Farrell also found that the record did not support a disability diagnosis. (*Id.* at UACL00414.) UNUM affirmed its denial of Swintek-Hallinan's claim for disability benefits.

## ANALYSIS

When an ERISA plan gives the plan administrator discretionary authority to determine eligibility for benefits, courts review an administrator's decision for an abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Hutchins v. Champion Int'l Corp.*, 110 F.3d 1341, 1344 (8th Cir. 1997). There is no dispute in this case that Swintek-Hallinan's long term disability plan provided UNUM with discretionary authority to determine benefit eligibility.

"Under the traditional abuse of discretion standard, the plan administrator's decision to deny benefits will stand if a reasonable person could have reached a similar decision." *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1162 (8th Cir. 1998). In considering whether a determination is reasonable a court should consider "both the quantity and

quality of the evidence" and "must determine whether the decision is supported by substantial evidence, which is more than a scintilla, but less than a preponderance." *Clapp v. Citibank*, 262 F.3d 820, 828 (8th Cir. 2001) (internal quotations omitted). Furthermore, a court should "not disturb a decision supported by a reasonable explanation even though a different reasonable interpretation could have been made." *Id.* (internal quotations omitted).

Under certain circumstances, however, a court's review can be less deferential to the administrator. If a claimant presents "material, probative evidence demonstrating that (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty" then a court should review an administrator's decision with greater scrutiny. *Woo*, 144 F.3d at 1160. In *Schatz v. Mutual of Omaha Insurance Company*, the Eighth Circuit stated that when the insurer is also the plan administrator, "we have recognized something akin to a rebuttable presumption of a palpable conflict of interest." 220 F.3d 944, 947-48 (8th Cir. 2000). Such a presumption can be overcome by ameliorating circumstances such as "equally compelling long-term business concerns that militate against improperly denying benefits despite the dual role." *Id.* at 948 (internal quotations omitted). Here, there is no dispute that UNUM is both the insurer and the administrator, thereby creating a rebuttable presumption of a conflict of interest. Furthermore, UNUM has not offered any ameliorating circumstances to rebut this presumption. Therefore, the Court finds that Swintek-Hallinan has met the first prong of the *Woo* test.

To satisfy the second prong of the *Woo* test, Swintek-Hallinan must "show that the conflict or procedural irregularity ha[d] some connection to the substantive decision reached." *Woo*, 144 F.3d at 1161 (internal quotations omitted). Swintek-Hallinan, therefore, must offer evidence that "gives rise to serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim." *Barnhart v. UNUM Life Ins. Co.*, 179 F.3d 583, 589 (8th Cir. 1999) (internal quotations omitted). The Court finds that Swintek-Hallinan has met this burden. UNUM's in-house physicians do not point to any conflicting information in Swintek-Hallinan's medical record. In fact, the UNUM doctors seem to accept everything in Swintek-Hallinan's medical record as true, but conclude that her treating physician's opinion that she is disabled is not supported because the record does not include any specific restrictions or limitations placed on Swintek-Hallinan by her physicians. The Court finds that this "missing" information is not enough to overcome the extensive documentation in Swintek-Hallinan's medical record of the pain, medical procedures, medications, and therapies she has endured over the course of two decades. Therefore, the Court finds that Swintek-Hallinan has met both prongs of the *Woo* test and the Court will review UNUM's denial with less deference.

If a plaintiff meets the two-prong *Woo* test, a court applies a "sliding scale" standard of review. That is, a court should "always review for an abuse of discretion, but . . . decrease the deference given to the administrator in proportion to the seriousness of the conflict of interest or procedural irregularity." *Woo*, 144 F.3d at 1161. In *Woo*, the court found that the insurance company's financial conflict, in conjunction with its failure to consult an outside physician was "egregious conduct." *Id.* at 1162. Therefore, the

*Woo* court required "that the record contain substantial evidence bordering on a preponderance" to uphold the denial of benefits. *Id.* at 1162. Similarly, in this case, UNUM is presumed to have a financial conflict and did not consult an outside physician, therefore, the Court will apply this same standard. The Court notes, however, that the result in this case would be the same under the traditional abuse of discretion standard as well.

The Court finds that the record does not contain substantial evidence to support UNUM's denial of benefits. Swintek-Hallinan's medical record includes nineteen years of objective problems including disc degeneration, disc bulging, scoliosis, and osteoporosis. She has had at least two surgeries, significant physical therapy, and taken numerous medications including dangerous steroids all to no (or little) avail. Based on her medical record, the Court is unwilling to accept UNUM's position that Swintek-Hallinan is not disabled because her treating physician did not put any restrictions on her. Swintek-Hallinan's medical record is replete with evidence that she has had difficulty working for years. Swintek-Hallinan has taken several leaves of absence, has used vacation and sick time to recover from episodes of pain, and has made significant effort to reduce her daily activities so she could continue working. Unlike a construction worker who would need to be told exactly how many pounds they could lift, or a truck driver who would need to be told how long they could sit in the cab of their truck in order to safely do their jobs despite their injury, a legal secretary would not need to be given similar limitations to return to work. Swintek-Hallinan was able to monitor her pain and adjusted her work schedule according to her abilities.

The Court is also unwilling to accept UNUM assertion that "[w]here the claimant's treating physicians offer inconsistent diagnosis, work restrictions, or opinions regarding disability, there is ample evidence to support a discontinuation of benefits under any standard of review." (Def.'s Mem. of Law in Supp. of Its Mot. for Summ. J. at 13-14.)  Swintek-Hallinan's medical record is *not* inconsistent.  It documents a woman who has been struggling with chronic back pain for almost two decades and whose condition has steadily worsened over that period of time, until April 2003 when she was unable to work at all, which is thoroughly documented by her treating physician.

Based on the above, the Court denies UNUM's motion for summary judgment and grants Swintek-Hallinan's motion for summary judgment.

**ORDER**

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that defendant's Motion for Summary Judgment [Docket No. 8] is **DENIED** and plaintiff's Motion for Summary Judgment [Docket No. 14] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:   July 6, 2005  
at Minneapolis, Minnesota.

          s/ John R. Tunheim  
          JOHN R. TUNHEIM  
          United States District Judge